UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CENTENNIAL INSURANCE COMPANY,

    Plaintiff,

-against-

UNITED STATES OF AMERICA,

    Defendant.

------------------------------------------------------------x

COMPLAINT

08 CV 00050



Plaintiff Centennial Insurance Company ("Centennial"), by its undersigned attorneys, as and for its complaint against defendant United States of America, says:

**PARTIES**

1. Centennial is a New York corporation and maintains its principal place of business at 100 Wall Street in New York, New York and is duly licensed to issue surety bonds in the State of New York.

2. Defendant is the United States of America.

**JURISDICTION AND VENUE**

3. This is an action, pursuant to 26 U.S.C. § 7426(a)(1), to set aside as wrongful a Notice of Levy, dated November 22, 2006, amended April 4, 2007 and amended August 13, 2007 (the "2006 Levy", the "2007 Levies", and/or the "Levy" or "Levies"), filed by the United States Department of Treasury - Internal Revenue Service (the "IRS") with the New York City Housing Authority ("NYCHA") against funds in NYCHA's possession and allegedly payable to NAP Construction Company, Inc. ("NAP").

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(e).

5. Venue is properly laid in this District pursuant to 28 U.S.C. § 1402(c) because the property allegedly subject to the Levy is located in this District.

### FACTS COMMON TO ALL CAUSES OF ACTION

6. Upon information and belief, on or about March 13, 2003, NAP entered into a contract with NYCHA, Contract No. BF0200002, whereby NAP was to perform construction work at various Bronx housing projects (the "Bronx Various Contract").

7. Centennial, as surety, issued a performance bond and a payment bond for the Bronx Various Contract, each bearing bond no. 447-417811 (the "Bronx Various Bonds") to (a) secure NAP's performance of the Bronx Various Contract and (b) NAP's payment to those persons or parties that supplied NAP with labor and/or material in connection with the Bronx Various Contract.

8. Upon information and belief, on or about October 30, 2003, NAP entered into a contract with NYCHA, Contract No. PL0200028, whereby NAP was to perform construction work at Borinquen Plaza in New York City (the "Borinquen Contract").

9. Centennial, as surety, issued a performance bond and a payment bond for the Borinquen Contract, each bearing bond no. 447-417848 (the "Borinquen Bonds") to (a) secure NAP's performance of the Borinquen Contract and (b) NAP's payment to those persons or parties that supplied NAP with labor and/or material in connection with the Borinquen Contract.

10. Upon information and belief, on or about October 30, 2003, NAP entered into a contract with NYCHA, Contract No. ED0200014, whereby NAP was to perform construction work at Reid Houses in New York City (the "Reid Contract").

11. Centennial, as surety, issued a performance bond and a payment bond for the Reid Contract, each bearing bond no. 447-417849 (the "Reid Bonds") to (a) secure NAP's performance of the Reid Contract and (b) NAP's payment to those persons or parties that supplied NAP with labor and/or material in connection with the Reid Contract.

12. Upon information and belief, on or about October 30, 2003, NAP entered into a contract with NYCHA, Contract No. ED0200008, whereby NAP was to perform construction work at Tilden/Belmont Houses in New York City (the "Tilden/Belmont Contract").

13. Centennial, as surety, issued a performance bond and a payment bond for the Tilden/Belmont Houses Contract, each bearing bond no. 447-417850 (the "Tilden/Belmont Bonds") to (a) secure NAP's performance of the Tilden/Belmont Contract and (b) NAP's payment to those persons or parties that supplied NAP with labor and/or material in connection with the Tilden/Belmont Contract.

14. Prior to Centennial's issuing surety bonds on behalf of NAP, Centennial required that NAP, among other indemnitors, signed a written General Indemnity Agreement, which was executed and dated on or about October 23, 2002 (the "Indemnity Agreement").

15. The Indemnity Agreement provides that payments on account or monies to become due under a bonded contract are trust funds for the payment of obligations for which Centennial would be liable under the bonds issued by Centennial.

16. The Indemnity Agreement gives notice and declaration of said trust are set forth as set forth in the October 23, 2002 Indemnity Agreement.

17. The Indemnity Agreement provides that all of NAP's rights in any money payable for any contract for which Centennial issued bonds on behalf of NAP were assigned to Centennial, in addition to other terms of the Indemnity Agreement, upon NAP's failing to

promptly discharge its obligations which may be claimable under any bonds issued by Centennial.

18. The assignment provisions set forth in the Indemnity Agreement relate back to the date that Centennial first issued bonds for NAP, which was on or about March 13, 2003 and/or October 30, 2003.

19. On or about November 24, 2006, Centennial filed the General Indemnity Agreement.

20. On or about February 16, 2007, Evans Cabinet ("Evans") commenced an action entitled *Evans Cabinet Corp., v. NAP Construction Company, Inc., Centennial Insurance Company,* Supreme Court of the State of New York, Kings County, Index No. 5796/07 (the "Evans Action"), whereby Evans sought recovery under the Tilden/Belmont Bonds due to NAP's failure to pay Evans for labor and material Evans supplied to NAP in connection with the Tilden Contract.

21. On or about August 31, 2007, Solco Plumbing ("Solco") commenced an action entitled *Solco Plumbing Supply, Inc. v. NAP Construction Company, Inc., Centennial Insurance Company,* Supreme Court of the State of New York, Kings County, Index No. 33240/07 (the "Solco Action"), whereby Solco sought recovery under the Tilden/Belmont Bonds due to NAP's failure to pay Solco for labor and material Solco supplied to NAP in connection with the Tilden/Belmont Contract.

22. On or about July 13, 2006, Cooper Electric Supply ("Cooper") commenced an action entitled *Cooper Electric Supply, v. NAP Construction and Centennial Insurance Company,* Supreme Court of the State of New York, Queens County, Index No. 15293/2006 (the "Cooper Action"), whereby Cooper sought recovery under the Tilden/Belmont Bonds due

to NAP's failure to pay Cooper for labor and material Cooper supplied to NAP in connection with the Tilden/Belmont Contract.

23. On or about September 28, 2007, Davis & Warshow, Inc. ("Davis & Warshow") commenced an action entitled *Davis & Warshow, Inc., v. NAP Construction Company, Inc. and Centennial Insurance Company,* Supreme Court of the State of New York, Kings County, Index No. 36321/07 (the "Davis & Warshow Action"), whereby Davis & Warshow sought recovery under the Tilden/Belmont and Borinquen Bonds due to NAP's failure to pay Davis & Warshow for labor and material Davis & Warshow supplied to NAP in connection with the Tilden/Belmont and Borinquen Contracts.

24. On or about December 12, 2007, Strober Building Supply, Inc. ("Strober") commenced an action entitled *Strober Building Supply, Inc., v. NAP Construction Company, Inc. and Centennial Insurance Company,* Supreme Court of the State of New York, Kings County, Index No. 45451/07 (the "Strober Action"), whereby Strober sought recovery under the Tilden/Belmont Bonds due to NAP's failure to pay Strober for labor and material Strober supplied to NAP in connection with the Tilden/Belmont Contract.

25. The payment bond lawsuits are still pending.

26. To the extent that Centennial incurs a loss with respect to the payment bond lawsuits, Centennial will be subrogated to the rights of NAP's subcontractors and suppliers with respect to the Tilden/Belmont and Borinquen contracts, including any rights the subcontractors and suppliers may have under Article 3-A of the New York Lien Law, with respect to the Tilden/Belmont and Borinquen Contracts.

27. Upon information and belief, there are open construction permits that must be closed in order for NYCHA to close out the Bronx Various, Borinquen and Tilden/Belmont Contracts.

28. On or about December 20, 2007 there was a meeting among NYCHA, NAP and Centennial, with the IRS present among other parties, confirming the existence of open permits and NYCHA requiring NAP and/or its surety Centennial to close out the open permits.

29. Upon information and belief, NYCHA and/or NAP will request that Centennial assist and thereby incur a loss with respect to the performance bonds to close out the open permits.

30. On or about November 22, 2006, the IRS filed the 2006 Levy with NYCHA, wherein the IRS contended that NAP owed the IRS the sum of $235,236.18.

31. On or about April 4, 2007, the IRS filed the 2007 Levy with NYCHA, wherein the IRS contended that NAP owed the IRS the sum of $434,853.88.

32. On or about August 13, 2007, the IRS filed the 2007 Levy with NYCHA, wherein the IRS contended that NAP owed the IRS the sum of $451,942.24.

33. Upon information and belief, the Levies are causing NYCHA to withhold funds that are otherwise due, or will become due, or may become due, to Centennial.

34. This action is being filed within nine (9) months of the date of the Levies.

### AS AND FOR A FIRST CAUSE OF ACTION

35. Centennial repeats Paragraphs 1 through 34 hereof.

36. Any funds being held by NYCHA on account of the Levies with respect to the Bronx Various, Borinquen, Reid and/or Tilden/Belmont Contracts are trust funds as defined by Article 3-A of the New York Lien Law and/or by the Indemnity Agreement.

37. As trust funds, the funds held by NYCHA are not property belonging to NAP and therefore the Levies cannot attach to the funds held by NYCHA.

38. For the IRS to recover funds from NYCHA to satisfy tax liabilities incurred by NAP outside the scope of the Bronx Various, Borinquen, Reid and/or Tilden/Belmont Contracts would constitute a diversion of statutory trust funds as defined by Article 3-A of the New York Lien Law and/or by the Indemnity Agreement.

39. Wherefore, the Levies must be dismissed and/or discharged.

### AS AND FOR A SECOND CAUSE OF ACTION

40. Centennial repeats Paragraphs 1 through 39 hereof.

41. The New York Lien Law prohibits a judgment creditor from executing against statutory trust funds.

42. The Levies have the legal effect of being a judgment.

43. The Levies cannot be used to seize statutory trust funds held by NYCHA.

44. Wherefore, the Levies must be dismissed and/or discharged.

### AS AND FOR A THIRD CAUSE OF ACTION

45. Centennial repeats Paragraphs 1 through 44 hereof.

46. Because Centennial is subrogated to the rights of the subcontractors and suppliers it has paid, Centennial's claim to the funds being held by NYCHA with respect to any specific contract on which Centennial has made a payment are superior to the IRS' claims insofar as the IRS' claims relate to NAP's tax liabilities incurred outside of such contract.

47. Wherefore, the Levies must be dismissed and/or discharged.

### AS AND FOR A FOURTH CAUSE OF ACTION

48. Centennial repeats Paragraphs 1 through 47 hereof.

49. Because Centennial is contingently subrogated to the rights of the NAP's subcontractors and/or suppliers it may be obligated to pay in the payment bond lawsuits, Centennial's claims to the funds being held by NYCHA with respect to the Borinquen and Tilden/Belmont Contracts are superior to the IRS' claims insofar as the IRS' claims relate to NAP's tax liabilities incurred outside of the two contracts at issue in the payment bond lawsuits.

50. Wherefore, the Levies must be dismissed and/or discharged.

### AS AND FOR A FIFTH CAUSE OF ACTION

51. Centennial repeats paragraphs 1 through 50 hereof.

52. Because Centennial is contingently subrogated to the rights of NYCHA in that it may be obligated to incur performance bond losses completing the project to close out the Bronx Various, Borinquen and Tilden/Belmont contracts, Centennial's claims to the funds being held by NYCHA with respect to the Bronx Various, Borinquen and Tilden/Belmont Contracts are superior to the IRS' claims.

53. Wherefore the levies must be dismissed and/or discharged.

### AS AND FOR A SIXTH CAUSE OF ACTION

54. Centennial repeats Paragraphs 1 through 53 hereof.

55. Centennial has been assigned NAP's right to payment of some or all of the monies held by NYCHA with respect to the Bronx Various, Borinquen, Reid and/or Tilden/Belmont Contracts.

56. Centennial's assignment rights were perfected prior to the filing of the Levies.

57. Centennial therefore has a superior right vis-à-vis the IRS to the funds held by NYCHA with respect to the Bronx Various, Borinquen, Reid and/or Tilden/Belmont Contracts to the extent the IRS has claims to such funds for tax liabilities incurred by NAP outside of the scope of these three contracts.

58. Wherefore, the Levies must be dismissed and/or discharged.

**WHEREFORE**, Centennial demands judgment as follows:

(a) Dismissing and/or discharging the Levy filed by the IRS;

(b) Ordering the IRS to disgorge any monies it has been paid by NYCHA pursuant to the Levy;

(c) Awarding Centennial costs of suit; and

(d) For such other relief as the Court deems appropriate and proper.

Dated: January 3, 2008
New York, New York

GOTTESMAN, WOLGEL, MALAMY
FLYNN & WEINBERG, P.C.
Attorneys for Plaintiff
Centennial Insurance Company
11 Hanover Square
New York, NY 10005
212-495-0100

By: _____
STEVEN WEINBERG (SW 4382)

*Index No.*     Case No.     *Year 20*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CENTENNIAL INSURANCE COMPANY,

                    Plaintiff,

-against-

UNITED STATES OF AMERICA,

                    Defendant.

---

COPY                       **COMPLAINT**

---

                    GOTTESMAN, WOLGEL, MALAMY,
                    FLYNN & WEINBERG, P.C.

*Attorneys for*         Plaintiff

                    11 HANOVER SQUARE
                    NEW YORK, N.Y. 10005
                    TEL. NO. (212) 495-0100
                    FAX NO. (212) 480-9797

---

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:* ....................................      Signature ....................................................

                    Print Signer's Name....................................

---

*Service of a copy of the within*                        *is hereby admitted.*

*Dated:*

                    *Attorney(s) for*

---

**PLEASE TAKE NOTICE**

Check Applicable Box

☐ **NOTICE OF ENTRY**
    *that the within is a (certified) true copy of a*
    *entered in the office of the clerk of the within-named Court on*      20

☐ **NOTICE OF SETTLEMENT**
    *that an Order of which the within is a true copy will be presented for settlement to the Hon.*      *, one of the judges of the within-named Court,*
    *at*
    *on*      20      *, at*      M.

*Dated:*                                             GOTTESMAN, WOLGEL, MALAMY,
                                            FLYNN & WEINBERG, P.C.

                    *Attorneys for*

To:                                                 11 HANOVER SQUARE
                                               NEW YORK, N.Y. 10005